**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF TEXAS**
**SAN ANTONIO DIVISION**

FILED

2009 MAY 26  A 11: 36

CLERK, US DISTRICT COURT
WESTERN DISTRICT OF TEXAS

DEPUTY

MATTHEW PARR individually,                    §
C.C.H. AND A.V.H., minor children,
B/N/F MATTHEW PARR,
      Plaintiffs,                                   §
                                      §

v.                                            §      Case No: SA-09-CA-0411- XR
                                        §

SHARON SIGALAS, individually              §
and in her official capacity as Judge of the
Youth Court of Jackson County,
YOUTH COURT OF JACKSON COUNTY
MISSISSIPPI,
MISSISSIPPI DEPARTMENT OF
HUMAN SERVICES,
JILL PATRICE JONES, individually, and
in her official capacity as agent of the
Mississippi Department of Human Services,
HARDY JONES, individually, and in his
official capacity as agent of the Mississippi
Department of Human Services,
CYNTHIA WILSON, individually, and
in her official capacity as Administrator
of the Youth Court of Jackson County
MICHAEL BRELAND, individually and
in his official capacity as prosecutor for
the Youth Court of Jackson County,
HARRISION COUNTY SCHOOL
DISTRICT,
ELMER MULLINS, in his official
capacity as principal of D'Iberville
High School and agent or employee of the
Harrison County School District,
HARRISON COUNTY SHERIFF'S
DEPARTMENT,
VAN MCCLENDON, individually and
in his official capacity as deputy sheriff

1

as social worker for the Mississippi
Department of Human Services,
LARRY ELLIS, individually,
COURTNEY GIBBS, in her capacity
as an agent of the Mississippi Department
of Human Services,
Defendants,        §

## FIRST AMENDED COMPLAINT

**TO THE HONORABLE JUDGE OF SAID COURT:**

NOW COMES MATTHEW PARR, individually, C.C.H. AND A.V.H., minor children, B/N/F MATTHEW PARR, hereinafter called Plaintiffs, complaining of and about the above listed Defendants, who, together, through their actions and failures to act, have deprived Plaintiffs of protected civil rights under color of law.

### PARTIES AND SERVICE

1. Plaintiff Matthew Parr (Mr. Parr) is a natural person domiciled at 2424 Gold Canyon Road, Apt 1617, San Antonio, Texas.

2. Defendant Sharon Sigalas (Judge Sigalas) is a justice of the Jackson County Youth Court located at 4903 Telephone Road, Pascagoula, Mississippi. She is sued in her individual and official capacities.

3. Defendant Youth Court of Jackson County is a unit of the 16TH District Chancery Court and is located at 4903 Telephone Road, Pascagoula, Mississippi.

4. Defendant Mississippi Department of Human Services (MDHS) is located at 750 N. State Street, Jackson, Mississippi.

5. Defendant Jill Patrice Jones (Jill Jones) is a licensed registered nurse, and is domiciled at 1320 Father Ryan Avenue, Biloxi, Mississippi. She is sued in her individual capacity.

2

6. Defendant Terrell Hardy Jones (Hardy Jones) is a natural person and is domiciled at 1320 Father Ryan Avenue, Biloxi, Mississippi.  He is sued in his individual capacity.

7. Defendant Cynthia Wilson (Ms. Wilson) is the Administrator of the Youth Court of Jackson County located at 4903 Telephone Road, Pascagoula, Mississippi.  She is sued in her official capacity.

8. Defendant Michael Breland is an attorney and the prosecutor of the Jackson County Youth Court located at 4903 Telephone Road, Pascagoula, Mississippi.   He is sued in his official capacity.

9. Defendant Harrison County School District  is located at 11072 Highway 49, Gulfport, Mississippi.

10. Defendant Elmer Mullins (Mr. Mullins) is the principal of D'Iberville High School and an agent or employee of Harrison County School District located at 11072 Highway 49, Gulfport, Mississippi.  He is sued in his official capacity.

11. Defendant Harrison County Sheriff's Department is located at 10451 Larkin Smith Drive, Gulfport, Mississippi.

12. Defendant Van McClendon (Deputy McClendon) is deputy sheriff and an employee or agent of the Harrison County Sheriff's Department located at 10451 Larkin Smith Drive, Gulfport, Mississippi.  He is sued in his official and individual capacities.

13. Defendant Matt Matthews is a licensed social worker and the supervisor and agent or employee of the Mississippi Department of Human Services located at 6343 Jefferson Avenue, Pascagoula, Mississippi.  He is sued in his official capacities.

14. Defendant Laura Taylor (Ms. Taylor) is a clerk of court and an agent or employee of the Jackson County Youth Court located at 4903 Telephone Road, Pascagoula, Mississippi. She is sued in her official capacities.

15. Defendant Lena Parker (Ms. Parker) is a licensed social worker and a Family Protection Worker of the Jackson County Office of the Division of Child and Family Services and agent or employee of the Mississippi Department of Human Services located at 6343 Jefferson Avenue, Pascagoula, Mississippi. She is sued in her official and individual capacities.

16. Defendant Lawrence Ellis aka "Larry" Ellis is a natural person domiciled at Biloxi, Mississippi. He is sued in his individual capacity.

17. Defendant Courtney Gibbs is an agent or employee of the Mississippi Department of Human Services located at 6343 Jefferson Avenue, Pascagoula, Mississippi. She is sued in her official capacity.

## PRELIMINARY STATEMENT

18. This is a complaint for relief under 42 U.S.C. §1983, against certain individuals and officials, workers, and judges in the Mississippi court system, along with other institutions, agencies, social workers and conspirators:

A. For declaratory and injunctive relief - Defendants, individually and in conspiracy with each other, violated plaintiffs' protected due process rights by a pattern and practice of criminally editing, falsifying, and manipulating official court records, docket records, and case files, in the action in which plaintiffs have been named a party before the Youth Court of Jackson County Mississippi;

4

B.  For damages - Defendants, in conspiracy with each other, deprived plaintiffs of due process and equal protection of the law in the Youth Court of Jackson County Mississippi, resulting in the "kidnapping" of C.C.H., A.V.H. and her newborn child, B.G., under color of law.

C.  For pendant state claims - Defendants, by their actions intentionally interfered with plaintiffs' parent-child relationship, by their fraudulent and deceitful actions.

## JURISDICTION

19.  This action arises under the United States Constitution and the laws of the United States and presents a federal question within this Court's jurisdiction under Article III Section 2 of the Constitution.

20.  Jurisdiction for this action is pursuant 28 U.S.C. §1331, as it deals with a civil complaint arising under the Constitution and laws of the United States, more specifically, 42 U.S.C. §1983, and the First, Fifth and Fourteenth Amendments to the United States Constitution.

21.  Jurisdiction of the pendant state claim is pursuant to 28 U.S.C. §1367, as it is founded on essentially the same factual foundation.

22.  The State of Mississippi, by virtue of Articles III and VI, and the Mississippi Judiciary, by virtue of Article VI, Section 175 of the Constitution of the State of Mississippi has made itself accountable for suit in Federal Court, precluding immunity under the Eleventh Amendment of the United States Constitution.

## NATURE OF ACTION

23.  This is an action under Title 42 U.S.C. Sec. 1983 to correct the deprivation of rights under color of law.

## STATEMENT OF FACTS

### Background Facts

24. Plaintiff Matthew Parr and Shalom Jones (Ms. Jones) have a personal relationship which began in or around 1988.  Their son, C.C.H. was born in 1993.

25. Plaintiff A.V.H is the biological daughter of Shalom Jones.  Mr. Parr and A.V.H. have a parent-child relationship and parental rights have been established in the Court.

26. Since October 21, 2007, Mr. Parr and Ms. Jones have shared Joint Managing Conservatorship of C.C.H. and A.V.H. by Order of the 288th Judicial District Court of Bexar County, Texas.

27. C.C.H. and A.V.H. both resided at the home of Mr. Parr in Bexar County, Texas from October, 2007 until approximately May 2008 at which time they returned to live with their mother in Harrison County, Mississippi

### Facts Concerning Legal Custody of Minor Children

28. On October 23, 2007, Mr. Parr and Shalom Jones, through their Attorney in San Antonio, Texas, filed an Original Petition in Suit Affecting Parent-Child Relationship.

29. The 288th Judicial District Court issued a Temporary Order appointing Mr. Parr and Ms. Jones as Joint Managing Conservators of minor children C.C.H. and A.V.H. outlining their rights and responsibilities during times of possession and while not in possession.

30. Jurisdiction was found to be in the State of Texas for all parties and subject matter.

31. The order granted Mr. Parr the right to represent the children in all legal matters.

32. The order grated exclusive rights to Mr. Parr to designate the primary residence of the children.

33. Prior to the cause before the Youth Court in Jackson County there has never been any other order pertaining to legal or physical custody of C.C.H. or A.V.H.

34. The Court considered the living situation, neglect and abuse that C.C.H. and A.V.H. had suffered at the hands of their maternal grandfather in drafting the Order.

35. On May 12, 2009 the Temporary Order was exemplified and certified and a copy was provided to the Youth Court of Jackson County Mississippi.

36. The Harrison County School District was provided a copy of the Order in August, 2008.

37. A copy of the order has been provided on more than one occasion to the Mississippi Department of Human Services through its agents and employees including Defendant Lena Parker.

38. The case before the Texas Court is still pending.

39. Neither the Mississippi Department of Human Services nor the Youth Court of Jackson County has notified the Texas Courts, the attorney of record or any party to the case before the Court in Texas.

### Facts Pertaining to Jill P. Jones and Terrell H. Jones

40. Defendant Terrell "Hardy" Jones is the biological father of Shalom Jones, mother of C.C.H and A.V.H.  He is married to defendant Jill Jones.  Jill Jones has no biological relationship to C.C.H. or A.V.H (the children).

41. Jill Jones is a Registered Nurse.  Terrell H. Jones is a self-proclaimed "pastor" and is an apartment manager.

42. During the periods the children lived in their home, Jill Jones and Terrell H. Jones (The Jones') had the duty to provide care and support to C.C.H. and A.V.H.

43. Between the years of 2000 and 2007, Jill P. Jones and Terrell H. Jones, either together or individually, on one or more occasions, knowingly made false statements and allegations to the Mississippi Department of Human Services with the intent and effect of interfering with the parent-child relationship between the children and their mother.

44. The Jones' have asserted that during the children's formative years that they had the parent-child relationship.

45. During the periods the Jones' claim to have been responsible for the care of the children, the children were enrolled in Medicaid, were required to apply for free lunch programs and received other government assistance.

46. Jill Jones and Terrell H. Jones' are deceiving the Court or defrauded the State and Federal Government.

47. Jill Jones and Hardy Jones have made false allegations to officers and agents of the Mississippi Department of Human Services and the Youth Court of Jackson County concerning Mr. Parr with the intent and effect of interfering with the parent-child relationship between Plaintiffs.

48. On or about October 8, 2007 at the request of Shalom Jones and after talking to the children, Mr. Parr drove to Mississippi to pick up the children from the home of Jill Jones and Hardy Jones because they were left without provisions or adequate supervision.

49. On or about October 10, 2007, the Jones' traveled outside of the State of Mississippi for three days without the children.

50. On one or more occasions, Jill P. Jones and Terrell H. Jones claimed to be the legal guardians of C.C.H. and A.V.H. to the Harrison County School District with the intent and

effect of interfering with the parent-child relationship between the children and their mother and deprived them of the ability to receive an education.

51. The Jones' again assumed the responsibility for care of A.V.H. in or around October 2008 after learning that A.V.H. had become pregnant.

52. In or around the month of January 2009, A.V.H. at the age of 14 and pregnant was required to leave the home of the Jones' for defending her mother after being subjected to repeatedly hearing her mother being referred to "crack head."

53. Jill Jones is a mandatory reporter as a licensed registered nurse pursuant to Mississippi and Federal Law.  Terrell Jones is a mandatory reporter as a "pastor," pursuant to Federal and state law.

54. Neither Jill Jones nor Terrell Jones have ever had an order granting physical or legal custody for either C.C.H. or A.V.H.

55. Jill and Terrell Jones have on one or more occasions since May 7, 2009, to C.C.H. and A.V.H., claimed to be in possession of a court order granting them custody and have waived a piece of paper in the air claiming to the children it was a court order.

56. A.V.H was placed in the home of the Jones' by MDHS following a shelter hearing on May 4, 2009.  C.C.H was placed in the same home after being taken from his school in handcuffs on May 7, 2009.

57. Since being placed in the home of the Jones' by the Youth Court of Jackson County and the Mississippi Department of Human Services several incidents of abuse have occurred at the hands of Jill Jones and Hardy Jones.  The Mississippi Department of Human Services was notified.  No action has been taken.

58. On May 7, 2009 Hardy Jones told C.C.H. that his father was out of the picture and he would never get custody of him again and referred to the Texas court order which gave Mr. Parr legal custody as "toilet paper."

59. Hardy Jones stated, in front of defendants Lena Parker and Courtney Gibbs, that he knew that Mr. Parr had given the drug crack cocaine to C.C.H.  C.C.H. immediately replied "No he didn't and I have never smoked crack."

60. Jill Jones arrived at the house after the statement was made and repeated it exactly in front of both Ms. Parker and Ms. Gibbs.

61. None of the Defendants or witnesses to the children's denial of the false allegations made by the Jones' has reported these denials to the Youth Court.

62. On May 14th at approximately 0630, Jill Jones woke A.V.H. telling her that she knew that A.V.H. had text messaged her mother and she was going to have her thrown into a home where she would never see her baby again.

63. On May 21st, A.V.H. and C.C.H. found a letter written by Jill Jones and/or Hardy Jones making false allegations about the plaintiffs including that while in Texas, Mr. Parr was unable to handle A.V.H. and had her thrown into a behavioral health center; that she was then dropped off at an airport and left alone with no arrangements for pick up on arrival in Mississippi; that Shalom Jones told the Jones' that while in Texas, C.C.H. had become "addicted to crack" and was obtaining it from Mr. Parr; that the reason C.C.H. "hated" Mr. Parr was that Mr. Parr had "sucker punched" him;  that A.V.H. was frequently left alone, unsupervised, while in Texas by Mr. Parr; that CPS had contacted them from Texas to make sure that A.V.H. was safely away from Mr. Parr;  and that while listening in on a phone conversation between C.C.H. and his father they heard C.C.H. state that he had "traded one

addiction for another" and that Mr. Parr encouraged him to continue to use drugs but warned

him that THC would stay in his system for 30 days.

64. In the above mentioned letter, a claim is made that it was told to a "friend" of Jill and Hardy

Jones' by C.C.H. that he had "smoked crack." The friend referred to is defendant Lawrence

Ellis.

65. None of the plaintiffs have been questioned as to whether any of the statements were

factual. All of the plaintiffs and Shalom Jones deny the allegations contained in the

document aforementioned and will attest under oath that they are false.

66. C.C.H. called Mr. Parr very upset after reading the letter because he was afraid that Jill

Jones and Terrell Jones "will lie and say anything." He is concerned that they are trying to

get his mother and father arrested so that there would be no obstacles to their keeping

A.V.H.'s baby and getting custody of him and his sister.

67. On one or more occasions, A.V.H. has been coerced by Jill Jones into taking prescription

birth control pills against her will and under threat of social isolation and other

consequences.

68. On one or more occasions, A.V.H. and C.C.H. have been threatened with consequences

including social isolation if they do not attend religious services with Jill Jones and Hardy

Jones which are contrary to their own religious practices and beliefs and those of Mr. Parr

and their mother, Shalom Jones.

69. On one or more occasions, A.V.H. and C.C.H. have been subjected to negative and

derogatory comments about their parents.

70. A.V.H. has not been enrolled in school while she has been in the physical custody of Jill

Jones and Terrell Jones.

71. A.V.H. is not permitted to sleep in the same room as her newborn. Jill Jones has told A.V.H. that the judge said the baby had to sleep in the room with her (Jill Jones).

72. The standard of care relating to the maternal-newborn is "rooming-in." Jill Jones is intentionally interfering with the mother-infant bonding at a crucial developmental period and denying A.V.H. her rights to decide what is in the best interest of her child.

### Facts Pertaining to Lawrence Ellis

73. Lawrence Ellis (Mr.Ellis) lives on the property adjacent to Jill Jones and Hardy Jones

74. Mr. Ellis is a convicted felon.

75. Mr. Ellis was released from prison on February 17, 2009 after being convicted on four counts of forgery.

76. On or about April 27, 2009, Mr. Ellis offered C.C.H. marijuana and the prescription drug "Neurontin" which he claimed to be "weed in a pill."

77. The reason that Mr. Ellis was with C.C.H. was that Terrell Jones sent Mr. Ellis to pick C.C.H. up after school at D'Iberville High School.

78. C.C.H. is afraid for his safety and that of his sister with Mr. Ellis nearby.

79. On or about May 21, 2009, Mr. Ellis made statements to C.C.H. with the intent of intimidating him. The statements included "You better get a lawyer."

80. C.C.H. fears that Mr. Ellis will retaliate against him and cause him physical harm upon learning he has been named as a defendant in this case.

### Facts Pertaining to the Mississippi Department of Human Services

81. In or around October, 2008 a case worker from the Mississippi Department of Human Services (MDHS) in Harrison County called Mr. Parr to tell him allegations had been made and to request a copy of the order from Texas.

12

82. Mr. Parr provided the information and was not contacted by MDHS directly or indirectly until May 2009

83. According to statements made by Lena Parker to Mr. Parr on May 8, 2009, Ms. Parker received a referral from the hospital where B.G. was born on April 17, 2009 because A.V.H. was a minor child at the time of her birth.

84. According to the Petition filed in the Youth Court of Jackson County on May 12, 2009, the Department of Human Services took legal and physical custody of A.V.H. and C.C.H. on April 21, 2009 based on the allegation that the minor children were neglected by ex parte order of the Youth Court of Jackson County.

85. There are no factual charges in the petition nor any which constituted an emergency removal.

86. No emergency situation existed.  This is evidenced by the timeline of the actions of MDHS and the Youth Court of Jackson County over the following weeks.

87. On April 21, 2009, Ms. Parker, acting as an agent of the Mississippi Department of Human Services removed A.V.H. and B.G. from the hospital and placed them in a shelter pending a shelter hearing.

88. C.C.H. was not removed at this time, though according to Ms. Parker an emergency situation existed.

89.  Without notifying Mr. Parr, Shalom Jones or C.C.H., the shelter hearing took place on May 4, 2009 and the children were ordered to be placed in the physical custody of Jill Jones and Hardy Jones.

90. On May 4, 2009 A.V.H. and her child, B.G. were taken to the home of Jill Jones and Hardy Jones by Lena Parker and Courtney Gibbs.

13

91. A.V.H. was instructed by Ms. Parker that she was not allowed further contact with her
mother or Mr. Parr.

92. On May 7, 2009, some sixteen days after determining that an emergency situation existed
which required that the children be removed from the legal and physical custody of their
parents and three days after receiving an ex parte order at the shelter hearing, Lena Parker
had C.C.H. picked up at his school and transported in handcuffs from Harrison County to
her office in Jackson County.

93. On May 8th, after learning from a concerned friend of C.C.H. of the events that took place,
Mr. Parr contacted Lena Parker and was told that there was a hearing on the 18th of May in
which he was named a party to the neglect of his son, C.C.H. and of A.V.H.

94. On May 11, 2009 Mr. Parr spoke to Ms. Lena Parker and explained that he was not being
notified of proceedings in the Youth Court and that he had seen no documents regarding any
allegations.  Ms. Parker stated that she had provided Mr. Parr's address to the Youth Court.

95. Ms. Parker has not initiated contact with Mr. Parr since that time nor returned any of his
phone calls.

96. Ms. Parker has continued actions in the Yourth Court thereby denying the civil rights of
C.C.H. and A.V.H as well as those of Mr. Parr and has withheld his contact information
from the Youth Court with the intent and effect that  he would not be aware of upcoming
hearings in which he was a named party.

97. A report of the of the abuse that C.C.H. and A.V.H. are being subjected to was reported to
Lena Parker by Mr. Parr on May 15th and to the Department of Human Services hotline on
May 18th by a nurse in Texas who learned of the situation on May 17th.  No action has been
taken.

98. Lena Parker failed to follow investigational guidelines and acted improperly and without the best interest of the minor children C.C.H. and A.V.H. in bringing an action before the Youth Court requesting removal of children from the custody of their lawful parents.

99. MDHS, Ms. Parker and their agents have placed the children in a home where they are being subjected to abuse and have failed to investigate allegations of this abuse.

100.   Matt Matthews as supervisor of the Jackson County office of the Mississippi Department of Human Services has failed to adequately train and supervise those under his supervision and has such contributed to the deprivation of the rights of plaintiffs.

101.   Ms. Parker has conspired with Jill Jones and Hardy Jones to deny plaintiffs' civil rights and interfere with the right to a parent-child relationship.

102.   Ms. Parker has not reported statements by C.C.H. or A.V.H. which contradict the findings of her investigation or the allegations made by Jill Jones and Hardy Jones.

103.   Ms. Parker has failed to perform her duty as an agent of the MDHS and has acted negligently resulting in the deprivation of the civil rights of Plaintiffs.

104.   No reasonable efforts were made by Ms. Parker or MDHS, its agents or employees to keep C.C.H. and A.V.H. in the legal custody of their parents.

105.   Ms. Parker failed to perform her duty and follow the guidelines of her department in conducting the investigation which led to the removal without due process of C.C.H. and A.V.H.

### Facts Pertaining to Judge Sigalas and the Youth Court of Jackson County

106.   Without notifying any parties, a shelter hearing took place on May 4, 2009 and C.C.H. and A.V.H. were placed in the home of Jill Jones and Hardy Jones.

107.   Judge Sigalas of the Youth Court of Jackson County disregarded the Uniform Rules of
Youth Court Procedure, the Mississippi Code of 1972 and the United States and Mississippi
Constitution in removing C.C.H. and A.V.H. from the legal custody of Mr. Parr.

108.   Judge Sigalas and the agents and officers of the Youth Court of Jackson County have
acted negligently which has resulted in depriving all plaintiffs' due process and other rights.

109.   On May 11, Mr. Parr contacted the office of Cynthia Wilson, the administrator of the
Youth Court and the clerk of the Youth Court, defendant Laura Taylor.  Ms. Taylor told Mr.
Parr that a hearing was scheduled on May 18th at 0830.  She claimed that neither he nor Ms.
Jones or A.V.H.'s biological father were served notice because contact information was not
in the case file.

110.   On May 12, 2009 a Petition was filed electronically by Michael Breland to have C.C.H.
and A.V.H. declared neglected children.

111.   In the petition, Ms. Jones' first name was misspelled and no address was listed.

112.   In the petition, Mr. Parr was named as "Matt Parar" and his address was left blank.

113.   The petition alleged that Ms. Jones on "one or more occasion" had used the illegal drug
"crystal meth" in the presence of C.C.H. and A.V.H.   There are no charges or allegations of
any wrongdoing by Mr. Parr.

114.   Ms. Jones, C.C.H. and A.V.H. deny the allegations.

115.   Ms. Jones and Plaintiffs were not aware of the charges, nor were they ever asked by Ms.
Parker or Mr. Breland as to the truth of the allegation during their investigation.

116.   Mr. Parr contacted the Youth Court on May 13, 2009 to verify that Ms. Parker had
submitted the continuance request.  The clerk said she received it but that the judge was

already gone for the week and would not see it until May 18th the day of the scheduled

hearing.

117.   Mr. Parr filed his own motion for continuance on May 13th and was told by the clerk of

the Youth Court that Judge Sigalas had been contacted and the first available date for a new

hearing was June 10, 2009 at 1330.  Mr. Parr agreed to the date.  As of the date of this filing,

no summons has been served to plaintiffs.

118.   Mr. Parr provided the Youth Court with an exemplified certified copy of the temporary

order from Texas on May 13th.

119.   Judge Sigalas has failed to perform her duty and acted negligently in allowing for the

removal of C.C.H. and A.V.H. without factual evidence.

120.   The State of Mississippi, receives funds from the Federal Government under Chapter 7,

Title 42 of the United States Code,  which it distributes to its agencies and judiciary

121.   Judge Sigalas has failed to ensure that her Court made "reasonable efforts" not to remove

the children as required under Federal law to continue to receive reimbursement under

Chapter 7, Title 42 of the United States Code.

122.   On May 18th, Mr. Parr received a summons by certified mail that he was to appear in

Youth Court in Jackson County Mississippi at 0803, on the same day, May 18.

123.   A copy of the petition filed electronically by Mr. Breland had been altered and now had

Mr. Parr's address handwritten in the space previously left blank.

124.   None of the named parties in the action before the Youth Court of Jackson County now

reside, attend school or work in Jackson County.

125.   The proper venue for the cause is the Youth Court of Harrison County not Jackson

County.

126.    No effective remedy is available in Jackson County.  The Youth Court and the Jackson County office of the Department of Human Services are corrupt.  Documents have been altered, information is being withheld, summons are being issued on dates which do not allow for named parties to appear, names and addresses are intentionally misspelled and hearings are taking place without the presence or notification of the parties or their attorneys.

127.    A guardian *ad litem* has been appointed by Judge Sigalas to represent A.V.H. and C.C.H. however, they have never met or spoken with him.  Mr. Parr has never had any conversation with him.

128.    Judge Sigalas and the Youth Court of Jackson County have disregarded the Uniform Rules of Youth Court Procedure, including but not limited to §43-21-203 Conduct of Proceedings.

129.    Judge Sigalas and the Youth Court of Jackson County are not honoring the valid order of a Court in another state.

**Facts Pertaining to the Harrison County Sheriff's Department and Van McClendon**

130.    On May 7, 2009, Deputy Van McClendon was dispatched by the Harrison County Sheriff's Department to transport C.C.H. to the office of Lena Parker in Jackson County after being informed that C.C.H. was an alleged victim of neglect.

131.    There is no procedure, nor is it the standard of practice to treat an alleged victim of neglect as a criminal.

132.    On May 7, 2009, C.C.H. was handcuffed while at school by Deputy McClendon.  He was not shown any order, informed of his rights or of the allegations that he was a victim of

neglect as required under the Uniform Rules of Youth Court Practice and the Constitution of the State of Mississippi.

133.   C.C.H. asked Officer McClendon to call his parents to let them know what was happening and Officer McClendon refused to do so.

134.   C.C.H. was transported to Ms. Parker's office and told that he could no longer see or speak to his parents and was now in the custody of Jill Jones and Terrell Jones.  He was then transported to their home.

135.   Van McClendon as an agent of the Harrison County Sheriff's Department, individually and in conspiracy with others willfully detained and falsely imprisoned C.C.H. on May 7, 2009 and deprived him of due process and equal protection rights.

136.   The action of Deputy McClendon also disregarded and interfered with the parent-child relationship and the rights of Mr. Parr to parent his child.

137.   The Harrison County Sheriff's Department has taken no action against Deputy McClendon.

**Facts Pertaining to the Harrison County School District**

138.   In October, 2007 the Harrison County School District blocked the withdrawl from school of C.C.H. and A.V.H. and refused to provide the Northside Independent School District in San Antonio, Texas with the children's academic records.

139.   Without proper documentation the Harrison County School District changed the legal guardian of C.C.H. and A.V.H. to Jill Jones and Terrell Hardy Jones.

140.   In August, 2008, Mr. Parr provided to Mr. Elmer Mullins a letter authorizing enrollment for C.C.H. in the Harrison County School District.  Attached to the letter was a copy of the order from the 288th Judicial District Court granting Mr. Parr the authority to do so.  The

letter also requested he be listed as one of the emergency contacts and be notified of any attendance, disciplinary or academic issues. It further authorized Mr. Mullins to provide a copy of the order to any State or County agency requesting information.

141. On May 8, 2009, Mr. Parr received a call from Elmer Mullins the principal of D'Iberville High School. Mr. Mullins stated that C.C.H. had agreed to go with Officer McClendon voluntarily and did not resist. He stated that he did not understand why C.C.H. was restrained.

142. Mr. Mullins verified that the contact information for both Mr. Parr and Ms. Jones as well as a copy of the Temporary Order from Texas was in C.C.H.'s file. He stated that neither Ms. Parker nor Deputy McClendon had requested to see the file which he would have provided.

143. Mr. Mullins told Mr. Parr that the guardians for C.C.H. were listed as Jill Jones and Hardy Jones and that a flag was on his record to notify them if he attempted to withdraw C.C.H. from school or enroll him in any other school. He stated that he was not aware of any new order changing the guardianship.

144. As a result of the errors, actions and omissions of the Harrison County School District, C.C.H. and A.V.H. have on one or more occasions been denied their right to a free public school education.

145. On more than one occasion the Harrison County School District has failed to provide them equal protection and has interfered with parent-child relationship and deprived Mr. Parr his right to parent his child.

20

**Facts About Damages**

146.   The Defendants' actions in kidnapping C.C.H. and A.V.H. under color of law has caused
Mr. Parr substantial physical and emotional distress.  He has been suffering from worry
about the welfare of his son and A.V.H.  He has felt grief, stress, humiliation, anxiety, fear
for the safety of the children, loss of trust and loss of confidence in the justice system,
feelings of betrayal by the justice system, shock and emotional scarring – all compensable
as emotional distress and other damages.

147.   The Defendants' actions in illegally handcuffing and detaining C.C.H. have caused
C.C.H. substantial emotional distress.  He has and continues to suffer from humiliation,
stress, anxiety, loss of trust and confidence in law enforcement and the justice system, shock
and emotional scarring – all compensable as emotional distress and other damages.

148.   The Defendants' actions and failure to act have caused substantial damages to A.V.H. in
the form of emotional distress including fear of having her child taken away, stress, anxiety
and loss of trust and confidence in the justice system as well as emotional scarring – all
compensable as emotional distress and other damages.

149.   The Defendants' actions have deprived C.C.H. and A.V.H. of their First Amendment
right to free exercise of religion.

150.   The Defendants' actions have deprived Plaintiffs of their Fifth and Fourteenth
Amendment rights to due process.

151.   The Defendents' actions have deprived Plaintiffs of their Fifth Amendment rights to
equal protection.

152.   The Defendants' actions have deprived Plaintiffs of their right to a parent-child
relationship without interference from the State.

153.   The Defendants' actions have deprived A.V.H. of her right to parent her child free from interference.

154.   Mr. Parr has been damaged in the amount of $2500 for past legal fees in obtaining the Order from the Texas Court, $1500 in defending himself against charges in the Youth Court of Jackson County, and $350 for the filing of this action in Federal Court plus other expenses past and future necessary to access the Courts.

155.   Mr. Parr has been damaged by loss of reputation from the false allegations made by Defendants Jill Jones and Hardy Jones.

156.   C.C.H. and A.V.H. have been damaged by being deprived of their right to receive and education.

157.   The Defendants' actions and failures to act have caused other damages, past and future to all Plaintiffs.

## COUNT 1

### Violation of Civil Rights – Official Capacity Defendants Only

158.   Plaintiffs reassert and incorporate all averments set forth above into this count.

159.   The judges, officers, agents and  employees of the Youth Court of Jackson County, the Mississippi Department of Human Services, the Harrison County Sheriff's Department and the Harrison County School District have engaged in a pattern and practice of violating Plaintiffs due process and equal protection rights as protected under the 5th and 14th Amendments to the United States Constitution;

160.   The judges, officers, agents and employees of the Defendants have deprived Plaintiffs of their Constitutional right to enjoy a parent-child relationship free from interference from the State.

161.  The actions of Defendants violate the Full Faith and Credit Clause in Article IV, Section 1 of the United States Constitution.

162.  The actions of Defendants violate the requirements set forth for agencies receiving reimbursement under Chapter 7 of Title 42 of the U.S. Code.

163.  The actions and lack of actions of the Defendants have on more than one occasion deprived C.C.H and A.V.H. of their right to a public education.

164.  The Plaintiffs have been damaged in numerous ways by the Defendants actions and failure to act.

165.  All of the actions of the defendants set forth above were done under color of law.

**WHEREFORE, the Plaintiffs request the following equitable relief:**

A.  Appoint a special master to investigate the falsification, alteration and concealment of records in the Jackson County Youth Court and Mississippi Department of Human Services to determine all of the parties who have conspired to falsify, alter, conceal and destroy records containing information which resulted in the actions taken against plaintiffs;

B.  Appoint a special master to investigate whether the Mississippi Department of Human Services is in compliance with Federal law, specifically Chapter 7 of Title 42 of the United States Code to determine whether the State of Mississippi is eligible for continued reimbursement of monies expended on foster care.

C.  Issue a temporary and permanent injunction, enjoining the agents and officers of the Jackson County Youth Court, the Department of Human Services Division of Child and

23

Family Services, the Harrison County Sheriff's Department, and their agents from editing, falsifying, concealing or destroying any records or documents related to this case;

D.  Issue an order to Judge Sigalas of the Jackson County Youth Court requiring her to provide Mr. Parr or his attorney of record with all records, documents, tapes and transcripts relating to this case at the expense of the Jackson County Youth Court;

E.  Issue an injunction to the clerk of the Jackson County Youth Court, enjoining her from failing to Docket all motions, orders, documents, and hearings in this matter in a timely manner;

F.  Issue an injunction to the Clerk of the Jackson County Youth Court, enjoining her or her agents from withholding the case file, from inspection by Mr. Parr or his counsel at any time upon reasonable request and notice;

G.  Issue an injunction to the Clerk of the Jackson County Youth Court, enjoining her or her agents from withholding or removing any documents that should be properly contained in case files, past or future of Plaintiffs.

H.  Issue an injunction to the Mississippi Department of Human Services and the Jackson County Youth Court from further prosecuting any cause against C.C.H. or A.V.H. pending a review of proper jurisdiction and venue.

I.  Issue an order to the Mississippi Department of Human Services to fully investigate wrongdoing by the Division of Child and Family Services in Jackson County in this case;

J.  Issue an order to the presiding judge of the 16th District Chancery Court to fully investigate wrongdoing by Judge Sigalas, agents and officers of the Jackson County Youth Court;

K.  Issue an order requiring the presiding judge of the 16th District Chancery Court to make referrals to the District Attorney's office for any criminal violations of laws discovered in the investigation of the Jackson County Youth Court;

L.  Issue an order requiring the Mississippi Department of Human Services to notify the District Attorney and Mississippi Attorney General's Office of any criminal violations of laws discovered in their investigation of the Department of Child and Family Services and its agents related to this case;

M.  Issue an order to the Harrison County Sheriff to fully investigate wrongdoings committed by its office and its agents relating to this case and to refer to the District Attorney any findings of criminal violations of the Mississippi Code.

N.  Any other relief as may be appropriate, including injunctive orders, damages, costs and attorney's fees.

## COUNT 2

### Violation of Civil Rights – Individual Capacity Defendants Only

166.  Plaintiffs reassert and incorporate all averments set forth above into this count.

167.  The defendants have individually and in conspiracy with each other intentionally interfered with the parent-child relationship between the plaintiffs and between C.C.H., A.V.H. and their mother.

168.  The defendants have individually and in conspiracy with each other intentionally interfered with the parent-child relationship between A.V.H. and her newborn child.

169. The defendants have individually and in conspiracy with each other violated the due process rights of Plaintiffs as protected under the 5th and 14th Amendments to the United States Constitution.

170. The defendants have individually and in conspiracy with each other violated the protected First Amendment rights of plaintiffs with respect to free exercise of religion.

171. The defendants have individually and in conspiracy with each other violated the rights of C.C.H. and A.V.H. by depriving them of the right to receive a public education.

172. Jill Jones and Hardy Jones, have conspired with each other and the other defendants to kidnap C.C.H. and A.V.H. and her newborn son. They have committed criminal acts including making false statements to officers of the Court, law enforcement agencies and the Mississippi Department of Human Services.

173. Jill Jones and Hardy Jones, individually and in conspiracy with each other defrauded the State of Mississippi and the U.S. Government in receiving directly or indirectly benefits for which they did not qualify.

174. The plaintiffs have been damaged in numerous ways by the actions of the defendants and their failures to act.

175. All the actions of the defendants set forth above were done under color of law.

**WHEREFORE, the Plaintiffs request the following equitable relief:**

A. A judgment in the plaintiffs' favor that the all of the defendants, individually and in concert, violated plaintiffs' protected 5th and 14th Amendment due process rights;

B. A judgment in the plaintiffs' favor that all of the defendants, individually and in concert violated plaintiffs' protected 1st Amendment rights with respect to religious freedom;

C.  A judgment in the plaintiffs' favor that all of the defendants, individually and in concert

   violated plaintiffs' rights to enjoy a parent-child relationship without interference as

   protected by Amendments 1, 5, 9 and 14 of the U.S. Constitution.

D.  Issue an order requiring the Mississippi Board of Nursing and any other state Board in which

   Jill Jones holds a license to practice as a Registered Nurse to investigate violations of the

   Nurse Practice Act and Rules and Regulations of the Board of Nursing.

E.  Issue an order for attorneys fees and costs against the defendants necessary to prosecute this

   action;

F.  Issue an order for previously expended attorneys fees for defense against the defendants'

   improper actions in the Jackson County Youth Court;

G.  An award of money damages against Jill Jones and Hardy Jones for violating the civil rights

   of plaintiffs;

H.  An award of money damages against all defendants for violating the civil rights of plaintiffs;

I.   An award of money damages against Van McClendon and the Harrison County Sheriff's

   Department for violating the civil rights of C.C.H;

J.  An award of money damages against all defendants for emotional distress;

K.  An award of money damages for injury to reputation;

L.  An award of money damages against all the defendants for loss of consortium between

   plaintiffs;

M.  Any other relief as may be appropriate, including injunctive orders, damages, costs and

   attorney's fees.

27

## COUNT 3

### Declaratory Judgment – Reimbursement Under Chapter 7 Title 42

176.   Plaintiffs reassert and incorporate all averments set forth above into this count

177.   The Mississippi Department of Human Services and the Youth Court of Jackson County

have failed to make "reasonable effort" nor have they met other requirements for continued

reimbursement under U.S.C. Title 42 Chapter 7.

**WHEREFORE**, the Plaintiffs request that a special master is appointed to investigate the

Mississippi Department of Human Services and the Mississippi Judiciary to determine if the

State of Mississippi continues to be eligible to participate in Federal reimbursement programs

under U.S.C. Title 42 Chapter 7 and other provisions of Title XIX, XX and XXI of the Social

Security Act.

## COUNT 4

### Declaratory Judgment – Mississippi Code Title 43-21

178.   Plaintiffs reassert and incorporate all averments set forth above into this count

179.   The kidnapping of children under color of law without due process is being done in the

Youth Courts behind § 43-21-561 of the Mississippi Code especially subsection (5).

180.   The law permits the denial of due process and deprives parties equal protection rights

protected by the U.S. Constitution under the guise that because the law states that no

adjudication can be used for impeachment purposes then parties have no right to due

process.

181.   The Fifth and Fourteenth Amendments are clear that no person may be deprived of "life, liberty, or property without due process of law."

182.   The removal of a child from the custody of a parent based on allegations which are permitted to be made without impunity meets the definition of "life, liberty and property" and therefore due process is required.

**WHEREFORE,** the Plaintffs request that the Court declare Mississippi Code Title 43 Chapter 21 unconstitutional as applied.

**Respectfully submitted on the 26th day of May, 2009,**

**Matthew M. Parr, pro se.**
**2424 Gold Canyon Road, Apt 1617**
**San Antonio, TX  78259**
**Telephone: (210) 519-8344**
**Email:  matthew_parr@att.net**

29